FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Aug 14, 2024

SEAN F. MCAVOY, CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

MICHAEL S.,[1]

               Plaintiff,

v.

MARTIN O'MALLEY, Commissioner of
Social Security,

               Defendant.

No.    1:24-cv-03005-EFS

**ORDER AFFIRMING THE ALJ'S
DENIAL OF BENEFITS**

Due to osteoarthritis of the knees, asthma, a back disorder, obesity, depression, and anxiety, Plaintiff Michael S. claims that he was unable to work fulltime for the closed period of November 18, 2018 through May 5, 2022, and applied for disability benefits and supplemental security income benefits. He appeals the denial of benefits by the Administrative Law Judge (ALJ) on the

---

[1] For privacy reasons, Plaintiff is referred to by first name and last initial or as "Plaintiff." *See* LCivR 5.2(c).

grounds that the ALJ improperly analyzed the opinions of Andrea Thomas, DO, improperly assessed Plaintiff's credibility as to his physical impairments, and erred in relying on vocational expert testimony at step five that was tainted by the prior two errors. As is explained below, Plaintiff has not established any consequential error. The ALJ's denial of benefits is affirmed.

## I.    Background

In February 2021, Plaintiff filed an application for benefits under Title 2 and Title 16, claiming disability beginning November 18, 2018,[2] based on the physical and mental impairments noted above.[3] Plaintiff's claims were denied at the initial and reconsideration levels.[4]

After the agency denied Plaintiff benefits, ALJ Douglas Cohen held a telephone hearing in November 2022, at which Plaintiff's representative appeared without Plaintiff and advised the ALJ that he was unable to reach Plaintiff.[5] A vocational expert testified.[6]

---

[2] AR 59. At the hearing, Plaintiff's counsel amended the claim to one for a closed period of disability ending May 5, 2022.

[3] AR 215-221, 225-230.

[4] AR 121, 127, 135.

[5] AR 54-65.

[6] *Id.*

After the hearing, the ALJ issued a decision denying benefits.[7] The ALJ found Plaintiff's alleged symptoms were not entirely consistent with the medical evidence and the other evidence.[8] As to medical opinions, the ALJ found:

- The opinions of consultative examiner Andrea Thomas, DO, to be partially persuasive.

- The opinions of state agency evaluator Craig Billinghurst, MD, to be partially persuasive.

- The opinions of state agency evaluators Rita Flanagan, PhD, and Gordon Hale, MD, to be somewhat persuasive.[9]

As to the sequential disability analysis, the ALJ found:

- Step one: Plaintiff meets the insured status requirements through September 30, 2024, and had not engaged in substantial gainful activity since November 18, 2018, the alleged onset date.

- Step two: Plaintiff had the following medically determinable severe impairments: osteoarthritis of the knees, asthma, a back disorder, and obesity.

---

[7] AR 35-53.  Per 20 C.F.R. §§ 404.1520(a)-(g), 416.920(a)–(g), a five-step evaluation determines whether a claimant is disabled.

[8] AR 43-46.

[9] AR 46-47.

- Step three: Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments, and the ALJ specifically considered Listings 1.15, 1.16, 1.18, 3.02, and 3.03.

- RFC:  Plaintiff had the RFC to perform light work with the following exceptions:

  [Plaintiff] is limited to occasionally climbing ramps or stairs only; he can occasionally balance, stoop, or crouch; he can never crawl or kneel; he can stand or walk no more than 2 hours in 8 hour workday; no more than occasional operation of foot controls; and he must avoid concentrated exposure to dust, fumes, odors, gases, environments with poor ventilation, wetness, humidity, temperature extremes, vibration, and hazards, such as unprotected heights, moving machinery, and commercial driving.

- Step four: Plaintiff is unable to perform his past relevant work as an asphalt worker, driver, and property maintenance worker.

- Step five: considering Plaintiff's RFC, age, education, and work history, Plaintiff could perform work that existed in significant numbers in the national economy, such as a final assembler (DOT 713.687-018), inspector (DOT 669.687-014), and table worker (DOT 739.687-182 ).[10]

---

[10] AR 41-49.

DISPOSITIVE ORDER - 4

1
2
3

Plaintiff sought timely review from the Appeals Council, and the Appeals Council denied review on November 17, 2023, after which Plaintiff filed suit in this Court.[11]

## II.    Standard of Review

The ALJ's decision is reversed "only if it is not supported by substantial evidence or is based on legal error,"[12] and such error impacted the nondisability determination.[13] Substantial evidence is "more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[14]

---

[11] AR 1-7, 209.

[12] *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012). *See* 42 U.S.C. § 405(g).

[13] *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012), *superseded on other grounds by* 20 C.F.R. § 416.920(a) (recognizing that the court may not reverse an ALJ decision due to a harmless error—one that "is inconsequential to the ultimate nondisability determination").

[14] *Hill*, 698 F.3d at 1159 (quoting *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997)). *See also Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (The court "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion," not simply the evidence cited by the ALJ or the parties.) (cleaned up); *Black v. Apfel*,

1

### III.    Analysis

2      Plaintiff seeks relief from the denial of disability on three grounds. He

3  argues the ALJ erred when evaluating the medical opinions and when evaluating

4  Plaintiff's subjective complaints regarding his mental impairments, and those

5  errors resulted in a third error at step five.  As is explained below, the Court

6  concludes that Plaintiff fails to establish the ALJ erred in his evaluation of the

7  medical opinion evidence, or Plaintiff's symptom reports, and because there was no

8  error at those steps, there was no error at step five.

9  **A.    Medical Opinions: Plaintiff fails to establish consequential error.**

10      Plaintiff argues the ALJ erred in his evaluation of the medical opinions.[15]

11  Specifically, Plaintiff first argues that the ALJ erred in rejecting the opinions of

12  examining consultant Dr. Thomas. Plaintiff argues that the ALJ erred in failing to

13  address that Dr. Thomas limited Plaintiff to lifting less than 10 pounds only four

14  times a day; could walk, sit and stand for a combined total of less than eight hours;

15  and would need to lie down to elevate his legs; and that the ALJ improperly

16  ─────────────────

17  143 F.3d 383, 386 (8th Cir. 1998) ("An ALJ's failure to cite specific evidence does

18  not indicate that such evidence was not considered[.]").

19  [15] An ALJ must consider and articulate how persuasive he found each medical

20  opinion, including whether the medical opinion was consistent with and supported

21  by the record. 20 C.F.R. §§ 404.1520c(a)-(c), 416.920c(a)–(c); *Woods v. Kijakazi*, 32

22  F.4th 785, 792 (9th Cir. 2022).

23

rejected all of Dr. Thomas' opined limitations because he had not treated Plaintiff for back pain.[16] Plaintiff argues that the ALJ failed to discuss the supportability of Dr. Thomas' opinions with the longitudinal record.[17]

  1. <u>Standard</u>

  The ALJ was required to consider and evaluate the persuasiveness of the medical opinions and prior administrative medical findings.[18] The factors for evaluating the persuasiveness of medical opinions and prior administrative medical findings include, but are not limited to, supportability, consistency, relationship with the claimant, and specialization.[19] Supportability and consistency are the most important factors,[20] and the ALJ must explain how he considered the supportability and consistency factors when reviewing the medical opinions and support her explanation with substantial evidence.[21] The ALJ may consider, but is

---

[16] ECF No. 6.

[17] *Id.*

[18] 20 C.F.R. §§ 404.1520c(a), (b); 416.920c(a), (b).

[19] 20 C.F.R. §§ 404.1520c(c)(1)-(5); 416.920c(c)(1)–(5).

[20] *Id.* §§ 404.1520c(b)(2); 416.920c(b)(2).

[21] *Id.* §§ 404.1520c(b)(2); 416.920c(b)(2); *Woods v. Kijakazi*, 32 F.4th a at 785 ("The agency must articulate . . . how persuasive it finds all of the medical opinions from each doctor or other source and explain how it considered the supportability and consistency factors in reaching these findings.") (cleaned up).

not required to discuss the following additional factors: the source's relationship to Plaintiff such as length of the treatment, purpose of the treatment relation and whether the source examined Plaintiff, as well as whether the source had advanced training or experience to specialize in the area of medicine in which the opinion was being given.[22] When considering the ALJ's findings, the Court is constrained to the reasons and supporting explanation offered by the ALJ.[23]  ALJ's are not required to articulate how they considered evidence from nonmedical sources using the requirements in paragraphs (a) through (c).[24]

   2.    Dr. Thomas' Report and Opinions

   On September 18, 2021, Plaintiff presented to Andrea Thomas, DO, for a one-time consultative evaluation.[25] Plaintiff reported that his primary complaint is a C1 fusion and that symptoms began in 1994, that include swelling of the neck, stiffness and inability to turn his head, which are worsened with movement, relieved with medication, and being treated by low impact exercise and stretching.[26] He reported a surgical history of spinal fusion in 1994 and hernia

---

[22] *Id.*

[23] *See Burrell v. Colvin*, 775 F.3d 1133, 1138 (9th Cir. 2014) (recognizing court review is constrained to the reasons the ALJ gave).

[24] 20 C.F.R. §§ 404.1520c(d); 416.920c(d)

[25] AR 336-347.

[26] AR 336.

repairs in 2000 and 2008.[27] He also reported a medical history of problems with his knees since 2008 and neuropathy since 2010.[28] Plaintiff reported that his medications were ibuprofen, albuterol, budesonide aerosol, and cyclobenzaprine; and that he had been unemployed since he left a job as a property manager in 2019.[29] Plaintiff reported that he was on a keto diet and typically spent the day with his three children and doing light chores.[30] Plaintiff reported extreme pain in his joints with physical exertion.[31] On examination, Plaintiff was nervous; had a scar on his forehead; had normal cardiac findings; and normal respiratory findings with no wheezes, rales, or rhonchi; had normal abdomen; and had trace edema of the bilateral lower extremities.[32]

Plaintiff was alert and oriented; had no balance issues; had a wide stance that was slow and antalgic; had muscle spasms in the cervical spine but had normal bulk, tone, and strength in his back, shoulders, arms, hands, legs, hips, and ankles.[33] Plaintiff's sensory examination was normal; straight leg raising was

---

[27] *Id.*

[28] *Id.*

[29] AR 337.

[30] *Id.*

[31] *Id.*

[32] AR 337-338.

[33] AR 338-339.

negative; he had equal, symmetric reflexes; he had bilateral knee effusions; he was able to lift and carry light objects; he was not able to squat; and he was able to get up and down from a chair and could get on and off an examination table slowly.[34] Plaintiff was able to walk on his toes but not heels; he could not hop on his feet bilaterally; was not able to untie his shoes and take his socks off; could fully extend his hand, make a fist, and oppose fingers; and could pinch, grasp, and manipulate small and large objects without difficulty.[35] With the exception of reduced range of motion in touching his ear to his shoulder and extending his back, Plaintiff's range of motion was normal.[36] X-Rays showed lumbar spine foramina narrowing of the L4 and L5; L5 disc space degeneration; no fracture, rotation, or spinal lithiasis; and left knee mild medial joint narrowing with soft tissue swelling.[37]

Dr. Thomas opined that Plaintiff should be limited to sitting no more than 2 hours continuously; should not stand; should not walk while on shift; should not lift more than 10 pounds and should lift no more than 4 times in an 8-hour shift;

---

[34] AR 339.

[35] AR 339-340.

[36] AR 340-342.

[37] AR 342.

DISPOSITIVE ORDER - 10

should not bend and should not squat.[38] Dr. Thomas recommended that Plaintiff use a cane for walking.[39]

       3.   <u>Relevant Medical Records</u>

     On January 8, 2019, Plaintiff presented to Katherine Nall-Birrer, PA-C, for follow-up for depression and anxiety and asked that his sertraline be increased, and that he had swelling in both ankles.[40] PA Nall-Birrer recommended compression stockings after an X-ray indicated no bony abnormality.[41]  On February 12, 2019, Plaintiff presented to PA Nall-Birrer, complaining that he had been off Sertraline for two weeks after running out of medication.[42] On February 26, 2019, Plaintiff presented to PA Nall-Birrer for follow-up of depression and anxiety, and reported significant help with his breathing after using his mother's inhaler.[43] Plaintiff noticed that he is winded after shoveling snow and has

---

[38] AR 343.

[39] *Id.*

[40] AR 491-492.

[41] *Id.*

[42] AR 482-483.

[43] AR 478.

occasional wheezing. [44] Plaintiff reported that he was tapering up his dosage of Sertraline. [45] On examination Plaintiff's pulmonary findings were normal.[46]

On March 12, 2019, Plaintiff presented to PA Nall-Birrer with complaints of asthma after doing a home cleaning job in which he used bug spray and wore a respirator.[47] Plaintiff was prescribed a steroidal inhaler, after stating his breathing was okay but harder and that he felt more conditioned due to a stair climbing exercise program.[48] PA Nall-Birrer assessed moderate persistent asthma without complication and advised Plaintiff to use Symbicort and albuterol twice a day.[49]

On April 29, 2020, Plaintiff presented to PA Nall-Birrer complaining of abdominal pain after a lot of heavy lifting and moving appliances such as a refrigerator, washer, dryer, and stove.[50] On examination, Plaintiff was positive for back pain, gait problems, and myalgias.[51]  On May 27, 2020, Plaintiff presented to PA Nall-Birrer complaining of a possible hernia, lower lumbar back pain, and a

---

[44] *Id.*

[45] AR 479.

[46] AR 481.

[47] AR 474.

[48] *Id.*

[49] AR 477-478.

[50] AR 462.

[51] AR 466.

painful and swollen right knee.[52] Plaintiff advised that his symptoms began when he was 16 days into an exercise challenge program of jumping jacks, walking, push-ups, crunches, lunges, and biking.[53] Plaintiff reported that he was still riding his bike and walking with his son. [54] On June 24, 2020, Plaintiff presented to PA Nall-Birrer, complaining of right knee pain and back pain, after crashing his bicycle while riding with this son 3 days prior. [55] Plaintiff reported that activity such as mowing the lawn aggravated the pain and caused swelling.[56] Plaintiff advised that prior to the re-injury he was feeling better and doing an exercise regimen of jumping jacks, walking, push-ups, crunches, lunges, and biking.[57] On July 14, 2020, Plaintiff presented to Eric Anderson, MD, and reported increased pain after he started a new exercise program involving repetitive squatting and jumping, and noted swelling as well.[58] On examination, there was normal strength and sensation, no swelling and tenderness in the medial joint line. [59]Dr. Anderson

---

[52] AR 456.

[53] *Id.*

[54] *Id.*

[55] AR 441.

[56] AR 441.

[57] AR 442.

[58] AR 432.

[59] AR 434-435.

assessed minimal degenerative changes at the medial compartment, and small joint effusion.[60]

On July 29, 2020, Plaintiff reported to PA Nall-Birrer for follow-up of knee and back pain, after increased pain from exercising on his bicycle and starting a recent job painting.[61] On August 11, 2020, Plaintiff presented to Dr. Anderson and reported significant but temporary relief in his right knee following injection at his last appointment.[62] Plaintiff reported worsening pain the last few weeks with activity such as squatting, kneeling, and going up and down stairs.[63] Dr. Anderson referred Plaintiff for an MRI of the knee.[64]

On October 12, 2020, Plaintiff presented to Dr. Allred for progressive right knee pain of 3-4 months.[65] On examination, Dr. Allred noted tenderness to palpation of the medial joint line, no lateral joint line tenderness, a ligamentously stable knee, and moderate effusion.[66] Dr. Allred noted a diagnosis of internal

---

[60] AR 436.

[61] AR 427.

[62] AR 425.

[63] *Id.*

[64] AR 426.

[65] AR 415.

[66] AR 418.

derangement of the right knee after an MRI on September 29, 2020.[67]On November 10, 2020, Plaintiff presented to PA Nall-Birrer, and reported an increase in right knee pain.[68] PA Nall-Birrer noted a 3-4 month history of progressive right knee pain and a diagnosis based on a September 28, 2020, MRI of medial meniscal tear, evidence of recent partial rupture of Baker's cyst, mild degenerative chondromalacia in the patellofemoral and medial compartments, and venous varicosities in the posterolateral soft tissues of the knee.[69]

On December 10, 2020, Plaintiff presented to Katherine Nall-Birrer, PA-C, complaining that he experienced shortness of breath and anxiety when touring a gold mine with his kids and stated that the ER told him his blood pressure was high following the incident.[70] Plaintiff stated that he believed he had overdone walking and climbing on his knee.[71] PA Nall-Birrer noted that Plaintiff's lifestyle was sedentary and he was gaining weight and experiencing binge eating.[72] Plaintiff

---

[67] AR 419.

[68] AR 410.

[69] *Id.*

[70] AR 404.

[71] *Id.*

[72] *Id.*

reported that he felt well since the ER visit and that his blood pressure and pain were reduced when he rested the knee for a couple days.[73]

On January 4, 2021, Plaintiff presented to Andrew Johnson, PA-C, for pre-operative clearance for January 14, 2021, surgery to be performed by Dr. Jared Allred.[74]  On January 14, 2021, Plaintiff underwent a right knee partial medial meniscectomy, microfracture of medial femoral condyle, removal of chondral loose body.[75] Plaintiff's post-operative diagnosis was right knee medial meniscus tear, full thickness chondral defect involving medial femoral chondyle, chondral loose body.[76] Dr. Allred note that Plaintiff was to be non-weightbearing for 4 weeks after surgery.[77]

On January 21, 2021, Plaintiff presented to Garen Blanchard, PA-C, for a 1-week follow-up after arthroscopic surgery.[78] Plaintiff was compliant, using crutches, and was not weight-bearing.[79]

---

[73] AR 408.

[74] AR 398.

[75] AR 391-392.

[76] AR 391.

[77] AR 392.

[78] AR 385.

[79] *Id.*

On March 4, 2021, Plaintiff presented to Randy Goerhing, PT, for an initial assessment for physical therapy following arthroscopic surgery of the right knee.[80] Plaintiff reported the use of crutches since the surgery but had been cleared for weight bearing.[81] Plaintiff advised he was leaving town for a month.[82] On examination, he was walking without crutches, had a mildly antalgic gait, and mild swelling of the knee.[83]

On April 19, 2021, Plaintiff was seen for a post-operative visit with Dr. Allred, following right knee arthroscopic meniscectomy, and removal of chondral loose body.[84] Plaintiff reported "significant" improvement in pain with a pain level of 4/10.[85] Dr. Allred noted trace effusion and minimal tenderness over the medial joint line.[86]

On June 1, 2021, Plaintiff presented to PA Nall-Birrer and reported left knee pain following right knee surgery on January 14, 2021.[87] Plaintiff reported

---

[80] AR 379.

[81] *Id.*

[82] *Id.*

[83] AR 380.

[84] AR 374.

[85] *Id.*

[86] *Id.*

[87] AR 369.

difficulty with prolonged walking and standing and stated that he notices it most while rising when standing up on his bike.[88] On examination, there was mild swelling over the right knee.[89]

On October 26, 2021, Plaintiff presented to PA Nall-Birrer for bilateral knee pain of over a year, reporting that he was much more active while his son was visiting and that his knees had swelling due to walking, playing catch, and bike riding.[90] Plaintiff reported catching and locking in the left knee.[91] Plaintiff was positive for arthralgias and myalgias but was negative for back pain, gait problems, joint swelling, neck pain, and neck stiffness. On examination, he had edema bilaterally in the lower extremities, and abnormal gain and was assessed with internal derangement of the left knee.[92] He was referred for an x-ray and MRI of the left and right knees.[93]

On November 15, 2021, Plaintiff presented to Dr. Allred, for follow-up of an MRI for his left knee.[94] Plaintiff reported pain at 6/10; denied popping, locking, or

---

[88] *Id.*

[89] AR 372.

[90] AR 358.

[91] *Id.*

[92] AR 361-362.

[93] AR 362.

[94] AR 350.

clicking; and reported 3-day relief after an injection.[95] On examination, Dr. Allred noted tenderness to palpation of the medial joint line and lateral joint line, and minimal crepitus with extension.[96]  Dr. Allred diagnosed complex tear of the lateral meniscus of left knee.[97] Dr. Allred agreed to proceed with surgical intervention.[98]

On January 27, 2022, Plaintiff presented to PA Blanchard for left knee pain.[99] Plaintiff complained of popping and clicking in his left knee and stated he had pain of a 7/10 due to compensating for his right leg.[100] On examination, he had large joint effusion on the left side, tenderness along the medial lateral joint line bilaterally, stable knee, and an antalgic gait.[101] PA Blanchard assessed a complex tear of the lateral meniscus of left knee, and primary osteoarthritis of the right knee.[102] A steroid injection was administered.[103] At a follow-up on March 14, 2022, Plaintiff reported his pain level was 8/10 and the injection relieved his pain for

---

[95] *Id.*

[96] AR 351-352.

[97] AR 352.

[98] *Id.*

[99] AR 558.

[100] *Id.*

[101] AR 559.

[102] AR 560.

[103] *Id.*

about 2 weeks.[104] Plaintiff requested that his knees be aspirated and that he be given another pain injection to relieve his pain until his pending surgery.[105] Plaintiff was given a corticosteroid injection.[106] On March 15, 2022, Plaintiff presented to PA Nall-Birrer, reporting that he had walked in a parade and did not have issues with asthmas but had pain in his knees.[107] On examination, Plaintiff was positive for arthralgias, back pain, gait problems, joint swelling, and myalgias.[108]

On May 5, 2022, Plaintiff underwent a left knee arthroscopic partial medial meniscectomy, chondroplasty of medial femoral condyle and trochlea, removal of loose body measuring 10 mm.[109]  On May 13, 2022, Plaintiff was seen for a post-operative visit by PA Blanchard.[110] He reported pain of 3/10 when at rest and 6/10 when moving.[111] Plaintiff was walking with crutches and refused additional pain

---

[104] AR 561.

[105] AR 562.

[106] AR 563-564.

[107] AR 566.

[108] AR 570.

[109] AR 577-578.

[110] AR 581.

[111] AR 581-582.

medication.[112] On examination, there was moderate joint effusion and mild tenderness over the incision.[113]Plaintiff was advised to transition out of the use of crutches but to avoid high impact activity for the next 4 weeks.[114] On the same day, Plaintiff presented to Paige McReynolds, PT, to begin physical therapy.[115] On May 26, 2022, Plaintiff reported to PT McReynolds that he had worked for several hours on a crane the prior day and his knee was a little sore.[116] On May 31, 2022, Plaintiff reported to Alan Machtames, PT Asst., that he was having more discomfort in his knees and did not do much over the weekend.[117] On June 2. 2022, Plaintiff presented to PT McReynolds and reported difficulty fully bending and straightening the knee and having soreness after doing yard work.[118] On June 7, 2022, PT McReynolds noted that Plaintiff was able to perform 10 lateral step-ups before feeling pain which quickly resolved.[119] On June 16, 2022, PT McReynolds noted that Plaintiff would be seen by orthopedics on June 20, 2022, and would

---

[112] AR 582.

[113] *Id*.

[114] AR 583.

[115] AR 584.

[116] AR 593.

[117] AR 595.

[118] AR 597.

[119] AR 600.

likely be discharged from physical therapy due to improvement.[120] On June 20, 2022, Plaintiff presented to PA Blanchard and noted a pain level of 7/10 mostly associated with squatting and going up and down stairs.[121] PA Blanchard noted that Plaintiff had significant chondral loss bilaterally and opined that injections would help.[122] On July 11, 2022, Plaintiff was given Euflexxa injections in both knees.[123]  The second injection was administered on July 25, 2022.[124] On August 1, 2022, Plaintiff presented to PA Blanchard and reported pain level of 3/10 and less grinding following knee injections.[125] On September 21, 2022, Plaintiff presented to PA Blanchard and reported a pain level of 3/10 and improvement following significant pain several weeks prior when he was doing a lot of squatting, bending, and lifting while doing his job.[126] His knee was still swollen and painful and he wanted to make sure he did not damage his knee further.[127] On examination,

---

[120] AR 607.

[121] AR 608-609.

[122] AR 610.

[123] AR 613.

[124] AR 616-617.

[125] AR 619.

[126] AR 622.

[127] *Id.*

1  Plaintiff's left knee had moderate effusion and mild tenderness with good strength

2  and stability.[128]

3      4.  <u>Analysis</u>

4      The ALJ gave the following reasoning as to his consideration of Dr. Thomas'

5  opinions:

> On September 29, 2021, claimant was seen for an internal medicine
> consultative examination reporting a history of spinal fusion in 1994
> and reporting that he has been out of work since 2019, although there
> a multiple references in the record to claimant working after 2019,
> and examination noted antalgic gait, claimant was unable to squat, he
> could toe-walk but not heel walk, he was unable to untie his shoes or
> take off his socks.  The claimant  reported severe bilateral knee pain.
> On examination, his mobility was severely limited by pain, he had
> obvious large knee effusions, he had reduced range of motion in the
> neck due to the fusion. Imaging showed L4-L5 disc space narowing
> and left knee with mild narrowing, and the evaluator opined that
> claimant could sit continuously for two hours, no standing or walking
> whatsoever, he could lift or carry less than 10 lbs., and he could never
> bend or squat (Exhibit 2F).
>
> The undersigned finds this opinion only partially persuasive.  Just one
> month after the examination, claimant reported to his primary
> provider he has been much more active, claimant had been walking
> and on his feet more than usual, and the record notes swelling in the
> knees (Exhibit 3F/12).  Less than six months after the examination
> claimant reported he walked in a parade (Exhibit 5F/9).  Furthermore,
> it was a one-time evaluation.  There is virtually no treatment for
> claimant's complaints of low back pain.  In November 2020, claimant
> reported his low back pain resolved and he was doing much better
> (Exhibit 3F/64-68).  At all follow up visits with his primary provider
> there is no mention of low back pain (Exhibit 3F).  The vocational
> expert enumerated only sedentary jobs.[129]

---

[128] AR 623.

[129] AR 46-47.

Plaintiff's argument that the ALJ erred in failing to consider that Dr. Thomas limited Plaintiff to sitting, standing, and walking for less than eight hours is clearly in error. The ALJ stated that Dr. Thomas opined that Plaintiff could sit for two hours and could not stand or walk at all. Clearly, the ALJ considered that limitation. Additionally, the ALJ's statement on its face acknowledges that Dr. Thomas limited Plaintiff to lifting and carrying less than 10 pounds.

Additionally, the ALJ's language is clear that he did not reject all of Dr. Thomas' opinions because Plaintiff had no treatment for back pain. The ALJ articulated clearly that he rejected Dr. Thomas' opinions regarding Plaintiff's limitations in walking and standing because they were inconsistent with the longitudinal record that showed that within a month of Dr. Thomas' examination and opined limitations based on it Plaintiff was engaging in far greater exertional activity than Dr. Thomas thought he was capable of performing.[130]

Plaintiff is correct that the ALJ is required to consider both the supportability of an opinion and the consistency of that opinion with the record as a whole. But there is no requirement that the ALJ use the actual wording of supportability or consistency. Here, the ALJ did in fact properly consider those factors, although he did not use those exact words.

---

[130] *Id.*

In his analysis, the ALJ detailed the findings of Dr. Thomas' examination that supported her opinions such as antalgic gait, inability to squat, large effusions, reduced range of motion, and objective testing showing disc space narrowing and knee narrowing.[131] But the ALJ then went on to detail that within a month of the examination Plaintiff's functioning was quite different.  The ALJ articulated that Dr. Thomas' findings on the date of examination supported her opinions but that the opinions were not consistent with the longitudinal record.

Dr. Thomas' examination took place in May 2021. One month prior, Plaintiff presented to Dr. Allred with significant improvement, trace effusion, minimal tenderness, and a reported pain level of 4/10.[132]  In June 2021, one month after Dr. Thomas' examination, Plaintiff again was seen by Dr. Allred, who noted that he had mild swelling and complained that he had difficulty with prolonged walking and when standing up on his bike.[133] In October 2021, Plaintiff was reporting that he was walking, playing catch, and bike riding.[134] As noted by the ALJ, Plaintiff reported that he walked in a parade in March 2022.[135]

---

[131] AR 46.

[132] AR 374.

[133] AR 369.

[134] AR 358.

[135] AR 566.

DISPOSITIVE ORDER - 25

Given that Dr. Thomas' opinions were in stark contrast to the record as a whole, and that the opinions were based on a one-time examination, the Court concludes that the ALJ's reasoning was not improper.   Because the Court concludes that Dr. Thomas' opinions, although supported by her one-time examination, were inconsistent with the medical record as a whole, including objective evidence documented in a short time prior to and after her examination, the ALJ did not err in rejecting the opinions. The Court thus concludes that Plaintiff failed to establish consequential error in the ALJ's consideration of Dr. Thomas' opinions.

5.    Summary

Because the ALJ committed no error in his consideration of the opinions of Dr. Thomas, the Court finds that no consequential error occurred and a remand is not warranted on this basis.

**B.    Symptom Reports: Plaintiff fails to establish consequential error**

Plaintiff argues the ALJ failed to properly assess his subjective complaints regarding physical impairments only.  He argues that the ALJ erred in finding that his subjective complaints were not consistent with the record and in reasoning that his allegations were inconsistent with lack of treatment for a back impairment.[136] Plaintiff argues that the ALJ erred in faulting him for his activity level, citing

---

[136] ECF No. 6.

caselaw that holds that ordinary activities of daily living are not inconsistent with an inability to work full time.[137]

1.    Standard

When examining a claimant's symptoms, the ALJ utilizes a two-step inquiry. "First, the ALJ must determine whether there is objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged."[138] Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the rejection."[139] General findings are insufficient; rather, the ALJ must identify what symptom claims are being discounted and what evidence undermines these claims.[140] "The clear and convincing standard is the most

---

[137] *Id.*

[138] *Molina*, 674 F.3d at 1112.

[139] *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (quoting *Lingenfelter*, 504 F.3d at 1036).

[140] *Id.* (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995), and *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) (requiring the ALJ to sufficiently explain why he discounted claimant's symptom claims)).

demanding required in Social Security cases."[141] Therefore, if an ALJ does not

articulate specific, clear, and convincing reasons to reject a claimant's symptoms,

the corresponding limitations must be included in the RFC.[142]

### 2. Plaintiff's Testimony

Plaintiff failed to appear for his hearing.[143] There are several Disability

Reports submitted which were filled out by staff members in his attorney's office.[144]

Additionally, Plaintiff submitted a Function Report on July 5, 2021 that is written

in the first-hand but self-reports itself as having been completed by Denice S.

(same surname as Plaintiff), which the Court will address as if written by

Plaintiff.[145] He stated that he was homeless and that he was limited in his ability

to work because of pain and limited use of the knees and neck.[146] He said that his

---

[141] *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)).

[142] *Lingenfelter*, 504 F.3d at 1035 ("[T]he ALJ failed to provide clear and convincing reasons for finding Lingenfelter's alleged pain and symptoms not credible, and therefore was required to include these limitations in his assessment of Lingenfelter's RFC.").

[143] AR 56.

[144] AR 250-256, 285-291, 296-302.

[145] AR 257-264.

[146] AR 257.

day consisted of drinking coffee and watching TV, and that he is not able to do "pretty much anything"; that he wakes at night due to pain; and that he needs assistance dressing, bathing, caring for hair, shaving, and using the toilet.[147] He said that he periodically needs reminders to groom himself; that he marks reminders to take medication on a calendar; that preparing his own meals causes pain and numbness in his arms, neck and upper back; and that he does minimal yard and house work for a couple of hours about three times a week.[148] Plaintiff said he goes out as little as possible because walking causes pain in his knees, back, and neck and that his legs go numb.[149] He said that he shops for groceries once every two weeks and that he needs help and spends about two hours shopping.[150]

Plaintiff said he watches TV often and has no problems and that his activities are limited due to pain.[151] Plaintiff said that he socializes in-person, on video, by phone, and by text and that he usually just chats with others.[152] He said that on a weekly basis he will go to church and appointments and that he has

---

[147] AR 258.

[148] AR 259.

[149] AR 260.

[150] *Id.*

[151] AR 261.

[152] *Id.*

someone accompany him to help him walk.[153] He has no problem getting along with others but does not socialize much because he is always in pain.[154] Plaintiff checked boxes to indicate he has problems with the following: lifting, walking, squatting, bending, standing, reaching, kneeling, stair climbing, completing tasks, concentration, and using hands.[155]

Plaintiff wrote that lifting any amount of weight or walking long distances caused unbearable pain; that he is right handed and can walk approximately 20 feet before having to take at least a one hour rest; that he can pay attention for an hour and can finish what he starts and follow instructions.[156] He said he has no problem with authority figures and has never been laid off because of problems getting along with others.[157] Plaintiff said he does not handle change or stress well and that he will isolate from others.[158] He says that he was prescribed crutches in 2021 and that he uses crutches, a cane, a wheelchair, and motorized carts at the

---

[153] *Id.*

[154] *Id.*

[155] AR 262.

[156] *Id.*

[157] *Id.*

[158] AR 263.

store.[159] Plaintiff said his medications were cyclobenzaprine, ibuprofen, budesonide aerosol, and albuterol aerosol.[160]

### 3. The ALJ's Findings and Analysis of those Findings

The ALJ separately considered Plaintiff's complaints regarding his knee impairments, asthma, and his back impairments.[161] The ALJ first addressed Plaintiff's allegations regarding his knee impairments, and noted that in June 2020, Plaintiff reported that he had crashed his bicycle, and that prior to the accident Plaintiff had issues with swelling in his knee when mowing his lawn and that going up and down stairs exacerbated pain.[162] The ALJ noted that at other medical appointments Plaintiff reported doing an exercise program with a lot of squatting and jumping; taking a two week camping trip, working as a painter, bidding for a landscaping job, and riding his bike for exercise.[163]

The ALJ noted that Plaintiff had findings on examination of antalgic gait, swelling in his knees, and reported pain with "prolonged walking and standing."[164] But he also noted that Plaintiff reported walking in a St. Patrick's parade without

---

[159] *Id.*

[160] AR 264.

[161] AR 43-46.

[162] AR 43.

[163] *Id.*

[164] AR 44.

problem.[165] The ALJ also noted that Plaintiff worked at a job that required

bending, squatting, and lifting.[166]

The ALJ further articulated:

The residual functional capacity assessment adopted in this decision
limits claimant to only two hours standing or walking, no crawling or
kneeling, and occasional operation of foot controls, and the vocational
expert testified that the standing and walking limitation limits
claimant to only sedentary jobs.[167]

The ALJ articulates that Plaintiff's assertions that he is incapable of even

sedentary exertion and is so limited that he cannot walk for more than 20 feet

without taking an hour's rest is in contradiction to the record that documents that

he has engaged in heavy work, camping, bike riding, walking in a parade, and

engaging in a high impact exercise program.[168]  This is not improper, and

Plaintiff's reliance on caselaw that holds it improper for an ALJ to discredit

testimony because of an ability to engage in ordinary, light or sedentary activities

is misplaced.  Here, Plaintiff alleged that he was unable to engage in even

sedentary activity while he regularly has engaged in heavy exertional and high

impact activity.

---

[165] *Id.*

[166] AR 45.

[167] *Id.*

[168] AR 44-45.

The ALJ also considered the evidence as it related to Plaintiff's asthma.[169] Specifically, the ALJ considered that Plaintiff's complaints of shortness of breath were associated with engaging in heavy exertional activity such as shoveling snow; moving large household appliances such as refrigerator, washing machine, dryer, and stove; going on a two-week camping vacation; residential painting; riding a bike; and walking in a parade.[170]

It was only after separately considering Plaintiff's claims with regard to his complaints regarding knee impairments and asthma that the ALJ stated "Considering the back disorder…" and then went on to note that Plaintiff's allegations regarding back pain were inconsistent with lifting very heavy appliances, touring a gold mine, riding a bike, and camping.[171]  The ALJ then stated:

> Claimant's only treatment for his back pain is through his primary provider despite seeing an orthopedic specialist for his bilateral knee pain.  The residual functional capacity assessment limits claimant to a reduced range of light work which the vocational expert testified limits claimant to sedentary jobs.[172]

Viewed in context, it is clear that the ALJ did not simply discredit Plaintiff's subjective claims regarding his all of his physical impairments including his knee

---

[169] *Id.*

[170] *Id.*

[171] AR 45-46.

[172] AR 46.

impairments due to lack of treatment for his back condition.  The ALJ considered the lack of treatment for a back impairment only when considering the back impairment and also considered it with other factors including its inconsistency with statements Plaintiff made to medical providers. The ALJ may discount a claimant's reported disabling symptoms if he can spend a substantial part of the day engaged in pursuits inconsistent with the reported disabling symptoms.[173]

In this instance, the Court concludes that the ALJ properly considered that Plaintiff's reported activities were not consistent with his allegations of extreme limitation.  Here, for instance, Plaintiff challenges the ALJ's formulated RFC, stating that he is not even sedentary work.

The Court concludes that the ALJ adequately explained his reasoning and committed no error.  The Court declines to remand as to this issue.

### 4.  Summary

It is the ALJ's responsibility to review and evaluate the conflicting evidence and Plaintiff's subjective complaints.[174] The ALJ meaningfully explained why he evaluated Plaintiff's subjective complaints as he did, and these reasons are supported by substantial evidence.

---

[173] *Molina*, 674 F.3d at 1113.

[174] *Tackett v. Apfel*, 180 F.3d 1094, 1102 (9th Cir. 1999).

**C.    Step five: The Court finds this issue moot.**

Plaintiff alleges that because the ALJ erred in rejecting the opined limitations provided by Dr. Thomas and by discounting Plaintiff's subjective testimony the ALJ gave a flawed hypothetical to the VE. Because the Court has concluded that the ALJ did not err in either regard, this issue is moot.

### IV.    Conclusion

Accordingly, **IT IS HEREBY ORDERED**:

1.    The ALJ's nondisability decision is **AFFIRMED**.

2.    The Clerk's Office shall **TERM** the parties' briefs, **ECF Nos. 6 and 10**, enter **JUDGMENT** in favor of **Defendant**, and **CLOSE** the case.

IT IS SO ORDERED. The Clerk's Office is directed to file this order and provide copies to all counsel.

DATED this 14th day of August 2024.

_Edward F. Shea_

EDWARD F. SHEA
Senior United States District Judge